DaShawn Hayes (State Bar No. 355912)
THE HAYES LAW FIRM
A Professional Law Corporation
5757 Wilshire Blvd., Suite 656
Los Angeles, CA 90036
Telephone:     (323) 570-0485
Email:          dphayesesquire@gmail.com

*Attorneys for Plaintiffs Hirose Enterprise LLC and Shuji Hirose*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| HIROSE ENTERPRISE LLC, *a Delaware limited liability company*; and SHUJI HIROSE, *an individual*,<br><br>                    Plaintiffs,<br><br>v.<br><br>JOHN HOLIDAY, *professionally known as* FOREMOST POETS; BEYONCE KNOWLES-CARTER, professionally known as BEYONCE; PARKWOOD ENTERTAINMENT, LLC; SONY MUSIC ENTERTAINMENT; SONY MUSIC PUBLISHING, LLC; and W CHAPPELL MUSIC CORP. d/b/a WC MUSIC CORP.,<br><br>                    Defendants. | **Case No.:**<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT**<br><br>**DEMAND FOR JURY TRIAL** |

**COME NOW** Plaintiffs Hirose Enterprise LLC and Shuji Hirose, by and through their counsel of record, who hereby file this Complaint against Defendants, and each of them, and allege as follows:

## INTRODUCTION

1.      This is an action for infringement of the copyright in the sound recording "Moonraker" (also rendered "Moon-Raker (Main Mix)") (the "Moonraker Sound Recording"), performed by Defendant John Holiday under the name Foremost Poets, and for breach of

1

COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT

contract against Holiday. The Moonraker Sound Recording is a fixture of house music, and its distinctive spoken-word introduction is among the most recognizable spoken passages in the genre.

2.    On or about July 29, 2022, the sound recording and musical composition "Alien Superstar" was released as part of the album *Renaissance* by Beyoncé Knowles-Carter. "Alien Superstar" opens by sampling the spoken-word introduction of the Moonraker Sound Recording. No Plaintiff, and no predecessor-in-interest of any Plaintiff, authorized that use.

3.    Defendant Parkwood Entertainment, LLC released "Alien Superstar" with no license at all for the Moonraker Sound Recording. Only on or about September 6, 2022—weeks *after* the release—did Parkwood obtain a purported license, and it obtained that license not from the owner but from Holiday: the performer, who had transferred his entire interest in the Moonraker Sound Recording by written agreement decades earlier, and who, approximately one month before, had acknowledged to Shuji Hirose that Hirose was the rightful rights holder of "Moonraker" and that all Parkwood paperwork should be forwarded to Hirose. Holiday purported to license rights he did not own; Parkwood and the other Defendants exploited, and continue to exploit, the resulting infringing work worldwide, including after receiving written notice in or about January 2023 that the use was unauthorized.

4.    Plaintiffs seek damages, Defendants' profits attributable to the infringement, injunctive relief, and contract remedies against Holiday.

**JURISDICTION AND VENUE**

5.    This action arises under the Copyright Act of 1976, 17 U.S.C. § 101 et seq. This Court has subject-matter jurisdiction over the copyright claims pursuant to 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over the breach of contract claim pursuant to 28 U.S.C. § 1367(a), because that claim is so related to the copyright claims that it forms part of the same case or controversy.

6.    This Court has personal jurisdiction over each Defendant. Each Defendant conducts continuous, systematic, and routine business within the State of California and within

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT**

this District; has purposefully directed the distribution, marketing, performance, and monetization of the infringing work "Alien Superstar" to residents of this District, including through streaming services and physical media available for purchase in this District; and has received substantial revenues from the exploitation of the infringing work in California. Defendants committed the infringing and other tortious conduct underlying Plaintiffs' claims in this District and could reasonably anticipate being sued in this forum.

7.　　Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a), because a substantial part of the events giving rise to the claims occurred in this District, because substantial acts of infringement have occurred in this District, and because each Defendant or its agent resides or may be found in this District.

8.　　A prior action concerning the works at issue, *Hirose Enterprises, LLC v. Holiday, et al.*, No. 2:25-cv-06973-MEMF-AJR (C.D. Cal.), was dismissed without prejudice on or about June 26, 2026, for lack of Article III standing, because the sole plaintiff named there—a Florida limited liability company—had not yet been organized when that action was filed. No court has adjudicated the merits of any claim asserted herein. Plaintiffs will file a Notice of Related Cases concurrently with this Complaint.

### PARTIES

9.　　Plaintiff Hirose Enterprise LLC ("Hirose Enterprise") is a limited liability company organized and existing under the laws of the State of Delaware (Delaware file number 5623034). Hirose Enterprise was formed on or about October 16, 2014, and the Internal Revenue Service assigned it Employer Identification Number 47-2114305 on or about October 20, 2014. Shuji Hirose is, and at all times since formation has been, its sole member. Hirose Enterprise's certificate of formation was previously canceled for non-payment of Delaware franchise taxes. On or about April 2, 2026, Hirose Enterprise filed a certificate of revival pursuant to 6 Del. C. § 18-1109, and it is presently in good standing. Upon revival, and by operation of 6 Del. C. § 18-1109, Hirose Enterprise stands as though its certificate of formation had never been canceled,

3

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT**

and all of its property, rights, and claims are vested in it as fully as they were held before the cancellation.

10.    Plaintiff Shuji Hirose ("Hirose") is an individual and a citizen of the State of Florida. Hirose founded and was at all relevant times the sole shareholder, sole director, and Chief Executive Officer of Soundmen on Wax, Ltd., a New York corporation ("Soundmen"), and is the sole member of Hirose Enterprise.

11.    Defendant John Holiday, professionally known as "Foremost Poets" and also known as "Johnny Dangerous" ("Holiday"), is an individual who, upon information and belief, is a citizen of the State of New Jersey. Holiday authored the musical composition of, and performed the vocals on, the Moonraker Sound Recording, and is credited as an author and/or composer of the infringing "Alien Superstar" sound recording and composition.

12.    Defendant Beyonce Knowles-Carter, professionally known as "Beyonce" is an individual, who, upon information and belief, is a citizen of the State of California. She is known for the production, recordation and composition of music that is distributed worldwide via the internet and other digital devices. Defendant is credited as an author and/or composer on the infringing "Alien Superstar" sound recording and composition.

13.    Upon information and belief, Defendant Parkwood Entertainment, LLC ("Parkwood") is a limited liability company organized and existing under the laws of the State of New York with a principal place of business in this District. Parkwood is responsible for the exploitation and distribution of sound recordings, and the collection of music royalties from the publication of the infringing work, on behalf of Beyoncé Knowles-Carter. Parkwood supervised the reproduction of the Moonraker Sound Recording in "Alien Superstar" and authorized the reproduction and distribution of the infringing work.

14.    Upon information and belief, Defendant Sony Music Entertainment ("SME") is a Delaware general partnership and one of the three largest distributors of recorded music in the world. While its headquarters is in New York, SME has substantial facilities in this District and distributes recorded music in this District in a variety of media. SME has been substantially

4

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT**

involved in the distribution of the infringing work in this District and elsewhere, including through internet streaming services and the sale of physical media such as vinyl records and compact discs, and has derived financial compensation from such distribution.

15.   Upon information and belief, Defendant Sony Music Publishing, LLC ("Sony Publishing") does substantial, continuous, and systematic business in the State of California and in this District. Sony Publishing is responsible for administering rights in, and collecting music royalties from, the publication of the infringing work on behalf of its authors and composers.

16.   Upon information and belief, Defendant W Chappell Music Corp., doing business as WC Music Corp. ("WC"), is a corporation organized and existing under the laws of the State of California that does substantial, continuous, and systematic business in the State of California and in this District. WC is responsible for administering rights in, and collecting music royalties from, the publication of the infringing work on behalf of its authors and composers.

17.   Plaintiffs are informed and believe, and thereupon allege, that in engaging in the conduct alleged herein, each Defendant acted for itself and, where applicable, as the agent of, in concert with, or with the authorization or ratification of, one or more of the other Defendants.

## FACTUAL ALLEGATIONS

### I.   Moonraker and the 1998 Agreement

18.   In or about 1997 and 1998, Soundmen operated a record label and music catalog administration business in New York under the leadership of Hirose, its founder, sole shareholder, sole director, and Chief Executive Officer.

19.   On or about January 15, 1998, Holiday and Soundmen entered into a written and signed exclusive recording agreement (the "1998 Agreement"), pursuant to which Holiday transferred to Soundmen all of Holiday's right, title, and interest in and to the sound recording of "Moonraker" and, to the extent held by Holiday, the underlying musical composition, in exchange for a flat fee of One Thousand Five Hundred Dollars ($1,500) and an agreement to divide publishing revenue from the composition equally between Holiday and Soundmen. The

5

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT**

publishing-revenue arrangement was a contractual revenue-sharing term and did not constitute a retention by Holiday of any co-ownership interest in the copyright in the master recording.

20.     The 1998 Agreement was the first in a series of written and signed exclusive recording agreements between Holiday and Soundmen, including an agreement in or about December 1999 for the tracks "Facing The Impossible" and "Moonraker Phase II," pursuant to which Holiday was paid $1,000, and an agreement in or about April 2000 for the track "Space Traffic," each under the same ownership structure as the 1998 Agreement. Each of these agreements was in writing and signed by Holiday and a representative of Soundmen, and pursuant to them Holiday transferred all right, title, and interest in the master recordings and copyright ownership to Soundmen.

21.     The original executed copy of the 1998 Agreement, together with other original business records of Soundmen, was lost in or about 2005, when the storage facility in which those records were maintained was burglarized. The existence and terms of the 1998 Agreement are established by, among other things, the parties' course of dealing over more than two decades, the parallel written agreements in the same series, and Holiday's own subsequent written agreements concerning "Moonraker" described below.

22.     Following execution of the 1998 Agreement, Soundmen commercially released the Moonraker Sound Recording on or about June 10, 1998, as a 12-inch vinyl release on the Soundmen on Wax label (catalog number SOW-416), and thereafter exploited and administered it, including through licensing agreements with domestic and international record labels.

23.     At no time after execution of the 1998 Agreement did Holiday own any interest in the Moonraker Sound Recording.

**II.     The Vesting of the Catalog in Hirose**

24.     In or about 2002, and in any event prior to Soundmen's dissolution, Soundmen assigned, transferred, and conveyed to Hirose, individually, all of Soundmen's right, title, and interest in and to its music catalog, including the Moonraker Sound Recording. That assignment was subsequently memorialized in a written Confirmatory Copyright Assignment executed on

6

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT**

or about July 18, 2026, between Soundmen on Wax, Ltd., acting through Shuji Hirose in furtherance of the winding up of its affairs, and Shuji Hirose, individually. A true and correct copy is attached hereto as Exhibit F.

25.    On or about September 25, 2002, Soundmen was dissolved by proclamation of the New York Secretary of State pursuant to Section 203-a of the New York Tax Law for non-payment of franchise taxes. Under Sections 1005 and 1006 of the New York Business Corporation Law, a dissolved corporation and its shareholders may continue to function for the purpose of winding up the corporation's affairs in the same manner as if the dissolution had not taken place, and, after paying or adequately providing for the payment of its liabilities, the corporation may distribute its remaining assets among its shareholders according to their respective rights. Hirose was Soundmen's sole shareholder.

26.    Accordingly, and in the alternative to the assignment alleged in Paragraph 23, upon and by reason of Soundmen's dissolution and the winding up of its affairs, all of Soundmen's right, title, and interest in and to its catalog, including the Moonraker Sound Recording, vested in Hirose as Soundmen's sole shareholder and sole distributee, by operation of law.

27.    From in or about 2002 forward, Hirose continuously administered, exploited, and licensed the Soundmen catalog, including the Moonraker Sound Recording, without interruption and without objection or competing claim from Soundmen, from Holiday, or from any other person or entity. Among other things, Hirose licensed "Moonraker" and related catalog works for release and remix projects with record labels and artists in the United States and Europe.

**III.    The Formation of Hirose Enterprise and the Transfer of the Catalog**

28.    On or about October 16, 2014, Hirose formed Hirose Enterprise under the laws of the State of Delaware to serve as the operating entity for his music catalog administration business, including the Soundmen on Wax catalog.

29.    In connection with the formation of Hirose Enterprise and the transition of the catalog's operations into it, Hirose assigned, transferred, and conveyed to Hirose Enterprise all

7

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT**

of his right, title, and interest in and to the catalog, including the Moonraker Sound Recording. That transfer was made and completed in or about the period from the formation of Hirose Enterprise through no later than August 7, 2016. That transfer was subsequently memorialized in a written Confirmatory Copyright Assignment executed on or about July 18, 2026, between Shuji Hirose and Hirose Enterprise. A true and correct copy is attached hereto as Exhibit G.

30. By no later than August 7, 2016, the catalog operated under letterhead identifying "Soundmen On Wax A Label Division of Movement Factory / Hirose Enterprise LLC," as reflected in a written Heads of Agreement dated on or about August 7, 2016, between Hirose Enterprise and Holiday concerning the Foremost Poets track "Funktion One" (the "2016 Agreement"). A true and correct copy of the 2016 Agreement is attached hereto as Exhibit C.

31. On or about September 14, 2017, Hirose Enterprise and Holiday, acting through Attribute Records, entered into a further written Heads of Agreement concerning two derivative works of "Moonraker" (the "2017 Agreement"), executed on the same letterhead. In the 2017 Agreement, Holiday dealt with Hirose Enterprise as the party controlling the Moonraker Sound Recording. A true and correct copy of the 2017 Agreement is attached hereto as Exhibit B.

32. Movement Factory is a separate limited liability company controlled by Hirose. Movement Factory does not hold, and has never held, any ownership interest in the Moonraker Sound Recording or the catalog; its appearance in the label division's trade name reflects operational affiliation only.

33. Holiday's own conduct—including the 2016 Agreement and the 2017 Agreement—confirms Holiday's recognition that the rights in the Moonraker Sound Recording were held and administered on the Hirose side of the 1998 Agreement, and not by Holiday.

34. In the alternative to the transfer alleged in Paragraph 28: if and to the extent the transfer from Hirose to Hirose Enterprise is determined to have been ineffective for any reason, then Hirose, individually, has at all times since in or about 2002 remained the legal owner of the Moonraker Sound Recording, including at all times during the acts of infringement alleged herein.

8

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT**

35.    Plaintiffs are the only persons or entities with any potential ownership interest in the Moonraker Sound Recording under the facts alleged herein, there is not now and never has been any dispute between them concerning that ownership, and each Plaintiff supports and joins in the claims of the other. Plaintiffs plead the ownership allegations of Paragraphs 23, 25, 28, and 33 in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

**IV.    Registration**

36.    On or about March 31, 2025, the United States Copyright Office issued a certificate of registration for "Moonraker," Registration No. SR 1-027-666, effective March 31, 2025, naming "Hirose Enterprise, LLC" as the copyright claimant. A true and correct copy of the certificate of registration is attached hereto as Exhibit A. The registration preconditions of 17 U.S.C. § 411(a) are satisfied.

**V.    The Florida Entity and the Prior Action**

37.    In or about 2025, in connection with his relocation to Florida, Hirose caused the organization of Hirose Enterprises, LLC, a Florida limited liability company (the "Florida Entity"), on or about August 6, 2025, principally in connection with restaurant operations in Florida.

38.    On or about August 6, 2025, Hirose executed a written instrument purporting to assign the Soundmen on Wax catalog, including the Moonraker Sound Recording, to the Florida Entity. That instrument was executed under the mistaken belief that Hirose then held those rights individually. In fact, those rights were then held by Hirose Enterprise, which had held them since no later than August 7, 2016, and which was the named claimant on the March 2025 copyright registration. Because Hirose then held no individual interest in the catalog, the instrument conveyed nothing to the Florida Entity.

39.    The Florida Entity has never administered, exploited, licensed, or otherwise exercised any right in the Moonraker Sound Recording or the catalog and claims no interest in them. On or about July 18, 2026, the Florida Entity, Hirose Enterprise, and Hirose executed a written Quitclaim Assignment and Acknowledgment confirming that the August 6, 2025

9

COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT

instrument conveyed no right, title, or interest to the Florida Entity, mutually rescinding that instrument in the alternative, and quitclaiming to Hirose Enterprise any right, title, or interest the Florida Entity may have held. A true and correct copy is attached hereto as Exhibit H.

40. The prior action described in Paragraph 8 was filed on or about July 29, 2025, in the name of the Florida Entity, which had not yet been organized on that date. On or about June 26, 2026, the court dismissed that action without prejudice for lack of Article III standing on that ground alone, without reaching the merits of any claim.

## VI.    The Infringement

41. Defendant Knowles-Carter is a critically acclaimed songwriter and recording artist, who, upon information and belief, owns, or has an ownership interest, in Defendant Parkwood. In addition to her ownership interest, Defendant Knowles-Carter has an exclusive recording artist agreement with Defendant Parkwood whereby she delivers compositions and sound recordings to Defendant Parkwood for publication.

42. To accomplish the same, Defendant Parkwood is under an exclusive licensing agreement with Defendant Sony Music Entertainment whereby Defendant Sony Music Entertainment distributes delivered compositions and sound recordings of Defendant Knowles-Carter through one of its recording imprints, Columbia Records.

43. In or around 2020, Defendant Knowles-Carter began the recording sessions for her seventh (7th) studio album, "Renaissance." The infringing album was recorded and performed in Los Angeles, California. Upon information and belief, Defendant Parkwood and Defendant Knowles-Carter enlisted the services of composers, Honey Redmond, Luke Solomon, and Chris Penny, to assist in the production of Renaissance. Collectively, Defendants Knowles-Carter, Redmond, Solomon, and Penny composed and wrote the infringing work, "Alien Superstar."

44. On or about July 29, 2022, the sound recording and musical composition "Alien Superstar" was released as part of the album Renaissance by Defendant Knowles-Carter. "Alien Superstar" opens with, and embodies, an unauthorized sample of the distinctive spoken-word

10

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT**

introduction of the Moonraker Sound Recording, in which Holiday performs the lyrics "Please do not be alarmed, remain calm / Do not attempt to leave the dancefloor / The DJ booth is conducting a troubleshoot of the entire system." The sampled material is qualitatively important to the Moonraker Sound Recording as a whole, its use in "Alien Superstar" is not de minimis, and an ordinary listener hearing both works would recognize that "Alien Superstar" incorporates material from "Moonraker."

45.     On or about August 3, 2022, Hirose spoke with Holiday by telephone concerning the licensing of "Moonraker" for use in "Alien Superstar." During that conversation, Holiday acknowledged that Hirose is the rightful rights holder of "Moonraker" and stated that all Parkwood paperwork should be forwarded to Hirose.

46.     Notwithstanding his own acknowledgment, on or about September 6, 2022—weeks after "Alien Superstar" had already been released—Holiday, through entities he owned and controlled, executed a written instrument purporting to grant Parkwood a nonexclusive license for the master use and composition of "Moonraker" for use in "Alien Superstar."

47.     Holiday owned no interest in the Moonraker Sound Recording in 2022, having transferred his entire interest to Soundmen by the 1998 Agreement. Holiday's purported license accordingly conveyed no rights in the Moonraker Sound Recording. At no time before or upon releasing "Alien Superstar" did Parkwood hold any license or authorization from any owner of the Moonraker Sound Recording. Upon information and belief, prior to entering into the purported license, Parkwood knew or should have known, through the exercise of reasonable diligence, that Holiday lacked authority to license the Moonraker Sound Recording, including in light of the recording's extensive commercial history under the Soundmen on Wax label and its successors for more than two decades.

48.     In or about October 2022, Hirose retained counsel, who communicated directly with Holiday demanding documentation of Holiday's dealings with Parkwood concerning "Moonraker." Holiday acknowledged receipt of those communications and confirmed that Parkwood had also contacted him regarding the matter.

11

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT**

49. On or about January 30, 2023, counsel acting for Hirose and Hirose Enterprise sent a written communication to Holiday, copying counsel for Parkwood Entertainment and for Columbia Records, stating that the use of "Moonraker" in connection with "Alien Superstar" was unauthorized and expressly reserving all rights of Hirose and Hirose Enterprise. Parkwood accordingly had actual written notice, no later than on or about January 30, 2023, that Plaintiffs asserted the use of the Moonraker Sound Recording in "Alien Superstar" was unauthorized.

50. No Defendant ever sought or obtained authorization from Hirose Enterprise, from Hirose, or from any predecessor-in-interest, for the reproduction, adaptation, distribution, or performance of the Moonraker Sound Recording in or as part of "Alien Superstar."

51. Since in or about July 2022 and continuing through the present, Defendants have reproduced, distributed, publicly performed by means of digital audio transmission, and otherwise exploited "Alien Superstar," embodying the unauthorized sample of the Moonraker Sound Recording, throughout the United States and the world, including in this District, through internet streaming services including Apple Music, Tidal, Spotify, YouTube Music, Pandora, and Amazon Music, and through the sale of physical media including vinyl records at retailers, including distribution through Sony Music Entertainment's recording label imprint, Columbia Records. In addition, following the release of Renaissance, "Alien Superstar" and "Moonraker" itself were publicly performed, without authorization, during the Renaissance tour, which comprised fifty-six shows beginning on or about May 10, 2023 and concluding on or about October 1, 2023, and during the Cowboy Carter tour, which comprised thirty-two shows beginning on or about April 28, 2025 and ending on or about July 26, 2025, including performances in California. Upon information and belief, those tours were produced and presented by or with the authorization of Parkwood, and their production and presentation entailed the unauthorized reproduction of the Moonraker Sound Recording.

52. Each Defendant has derived substantial revenue from the exploitation of "Alien Superstar," including revenue attributable to the unauthorized use of the Moonraker Sound Recording.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT**

53.     Defendants' conduct has been knowing and willful. Parkwood released the infringing work with no license at all, then papered its use through a purported license from the wrong party, and continued its exploitation after receiving written notice on or about January 30, 2023 that the use was unauthorized; Holiday purported to license rights he knew he had transferred decades earlier and had acknowledged weeks earlier belonged to Hirose; and all Defendants have continued their exploitation of the infringing work after the assertion of Plaintiffs' rights, including after the filing of the prior action on or about July 29, 2025.

### FIRST CLAIM FOR RELIEF

### Direct Copyright Infringement—17 U.S.C. §§ 106, 501

### (Against Knowles, Parkwood, SME, Sony Publishing, and WC)

54.     Plaintiffs incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

55.     The Moonraker Sound Recording is an original work of authorship fixed in a tangible medium of expression and is protected by a valid copyright, registered as alleged in Paragraph 35.

56.     Hirose Enterprise is the legal owner of the copyright in the Moonraker Sound Recording, including the exclusive rights of reproduction, preparation of derivative works, distribution, and public performance by means of digital audio transmission under 17 U.S.C. § 106. In the alternative, as alleged in Paragraphs 33 and 34, Hirose is the legal owner of that copyright and those exclusive rights, and was the legal owner at all times during the acts of infringement alleged herein.

57.     Parkwood, SME, Sony Publishing, and WC, and each of them, without authorization from any Plaintiff or any predecessor-in-interest, have reproduced the Moonraker Sound Recording in "Alien Superstar"; prepared and exploited a derivative work embodying the Moonraker Sound Recording; distributed the infringing work to the public in physical and digital formats; publicly performed the infringing work by means of digital audio transmission; and/or authorized and participated in each of the foregoing, and have collected revenue therefrom.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT**

58. Each such act constitutes infringement of Plaintiffs' exclusive rights under 17 U.S.C. § 106, in violation of 17 U.S.C. § 501.

59. Each act of infringement within three years preceding the filing of this Complaint, and each act of infringement as to which Plaintiffs' claims otherwise remain timely, is separately actionable.

60. Defendants' infringement has been willful, in that Defendants knew or recklessly disregarded that their exploitation of the Moonraker Sound Recording was unauthorized.

61. As a direct and proximate result of the foregoing, Plaintiffs have been damaged, and Defendants have obtained profits attributable to the infringement, in amounts to be proven at trial. Plaintiffs are entitled to recover their actual damages and Defendants' profits attributable to the infringement pursuant to 17 U.S.C. § 504(b).

62. Defendants' continuing infringement is causing irreparable injury to Plaintiffs for which there is no adequate remedy at law, and unless enjoined, Defendants will continue to infringe. Plaintiffs are entitled to injunctive relief pursuant to 17 U.S.C. § 502.

**SECOND CLAIM FOR RELIEF**

**Contributory Copyright Infringement**

**(Against Holiday and Parkwood)**

63. Plaintiffs incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

64. Third parties, including the Defendants named in the First Claim for Relief, streaming services, and physical-media distributors and retailers, have directly infringed Plaintiffs' copyright in the Moonraker Sound Recording by reproducing, distributing, and publicly performing "Alien Superstar" as alleged herein.

65. Holiday with actual knowledge that he had transferred his entire interest in the Moonraker Sound Recording by the 1998 Agreement, affirmatively and intentionally induced, encouraged, and materially contributed to that direct infringement by, among other things, executing and delivering, for payment, a written instrument purporting to license master-use

14

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT**

rights in "Moonraker" that he did not own, thereby purporting to authorize, and actively enabling, the creation and worldwide exploitation of the infringing work.

66.    Parkwood, having released "Alien Superstar" with no license at all, having thereafter procured a purported license from Holiday rather than from any owner of the Moonraker Sound Recording, and having actual written notice no later than on or about January 30, 2023 that the use was unauthorized, has nonetheless affirmatively and intentionally induced, encouraged, and materially contributed to the continuing direct infringement of third parties by, among other things, continuing to direct, supply, license, promote, and authorize the reproduction, distribution, and public performance of the infringing work, with the object and effect of bringing about its continued exploitation.

67.    The foregoing conduct constitutes contributory copyright infringement, was willful, and has damaged Plaintiffs and unjustly profited Holiday and Parkwood in amounts to be proven at trial. Plaintiffs are entitled to the remedies described in Paragraphs 57 and 58.

## THIRD CLAIM FOR RELIEF

### Vicarious Copyright Infringement

### (Against Parkwood and SME)

68.    Plaintiffs incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

69.    Parkwood and SME each possessed, and possess, the right and practical ability to supervise, control, limit, or stop the reproduction, distribution, and public performance of "Alien Superstar," including through their control over the master recording, its release, its distribution channels, and its withdrawal from exploitation.

70.    Parkwood and SME each receive a direct financial benefit from the infringing exploitation of "Alien Superstar," including revenues from streaming, sales, and other monetization of the infringing work.

71.    Notwithstanding that right and ability, and while receiving that direct financial benefit, Parkwood and SME have declined to supervise, limit, or stop the infringing exploitation.

COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT

72. The foregoing conduct constitutes vicarious copyright infringement and has damaged Plaintiffs and unjustly profited Parkwood and SME in amounts to be proven at trial. Plaintiffs are entitled to the remedies described in Paragraphs 57 and 58.

## FOURTH CLAIM FOR RELIEF

### Breach of Contract

### (Against Holiday)

73. Plaintiffs incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

74. The 1998 Agreement is a valid and enforceable written contract between Holiday and Soundmen. Plaintiffs, as successors-in-interest to Soundmen's rights under the 1998 Agreement as alleged in Paragraphs 23, 25, 28, and 33, are entitled to enforce it. Although the original executed copy of the 1998 Agreement was lost as alleged in Paragraph 20, its existence and terms are established by secondary evidence, including the parties' course of dealing and Holiday's subsequent written agreements concerning "Moonraker," including the 2017 Agreement.

75. Pursuant to the 1998 Agreement, Holiday promised, among other things: (a) that Soundmen would own one hundred percent of the copyright ownership in the master recordings, including the Moonraker Sound Recording; (b) that income from third-party licensing of the works would be divided equally between Holiday and Soundmen on a 50/50 basis, which revenue-sharing arrangement did not apply to revenue from Soundmen's own releases of the works; and (c) by necessary implication, that Holiday would not purport to license or otherwise exploit rights in the master recordings that he had conveyed, and would remit the contractual share of any publishing or licensing revenue he received from third parties in connection with the works.

76. Soundmen and its successors performed all conditions, covenants, and promises required of them under the 1998 Agreement, except as excused.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT**

77. Holiday breached the 1998 Agreement by, among other things: (a) on or about September 6, 2022, purporting to grant Parkwood a master use license of the Moonraker Sound Recording, and creating and enabling a derivative of the Moonraker Sound Recording in "Alien Superstar," notwithstanding his conveyance of all right, title, and interest in the master recordings to Soundmen; (b) accepting and retaining for himself the entire consideration paid for that purported license, including amounts constituting third-party licensing income in which Soundmen's successors-in-interest hold a contractual fifty percent interest, without remitting Plaintiffs' share; and (c) to the extent Holiday has received or receives third-party licensing income derived from "Moonraker," including in connection with the exploitation of "Alien Superstar," failing to remit the contractual share of that revenue, with each such failure to remit constituting a separate and continuing breach.

78. As a direct and proximate result of Holiday's breaches, Plaintiffs have been damaged in an amount to be proven at trial, including the contractual share of all consideration and revenue Holiday has received in connection with the exploitation of "Moonraker" and "Alien Superstar."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. For a judgment that Defendants, and each of them, have infringed Plaintiffs' copyright in the Moonraker Sound Recording;

2. For a permanent injunction pursuant to 17 U.S.C. § 502 restraining Defendants, and each of them, and their officers, agents, servants, employees, and attorneys, and all those in active concert or participation with them, from further infringement of the copyright in the Moonraker Sound Recording;

3. For Plaintiffs' actual damages and Defendants' profits attributable to the infringement pursuant to 17 U.S.C. § 504(b);

17

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT**

4.    For Plaintiffs' full costs of suit and, to the extent permitted by law, reasonable attorneys' fees;

5.    On the Fourth Claim for Relief, for compensatory damages according to proof, including the contractual share of all license consideration and publishing revenue received by Holiday in connection with "Moonraker" and "Alien Superstar";

6.    For an accounting of all revenues received by Defendants in connection with the exploitation of "Alien Superstar" to the extent necessary to the foregoing remedies;

7.    For prejudgment and post-judgment interest to the extent permitted by law; and

8.    For such other and further relief as the Court deems just and proper.

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT**

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED:        August 10, 2026

Respectfully Submitted,

DaShawn Hayes (State Bar No. 355912)
THE HAYES LAW FIRM
A Professional Law Corporation
5757 Wilshire Blvd., Ste 656
Los Angeles, CA 90036

Telephone:    (323)570-0485
Email:        dphayesesquire@gmail.com

*Attorneys for Plaintiffs Hirose Enterprise LLC and Shuji Hirose*

19

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT**

**EXHIBIT INDEX**

- **Exhibit A.** Certificate of Registration No. SR 1-027-666, effective March 31, 2025

- **Exhibit B.** September 14, 2017 Heads of Agreement (Moonraker Remixes)

- **Exhibit C.** August 7, 2016 Heads of Agreement (Funktion One Deal Memo)

- **Exhibit D.** Delaware formation, status, and revival records for Hirose Enterprise LLC

- **Exhibit E.** IRS Form CP 575 G (EIN assignment)

- **Exhibit F.** Confirmatory Copyright Assignment dated July 18, 2026, between Soundmen on Wax, Ltd. and Shuji Hirose

- **Exhibit G.** Confirmatory Copyright Assignment dated July 18, 2026, between Shuji Hirose and Hirose Enterprise LLC

- **Exhibit H.** Quitclaim Assignment and Acknowledgment dated July 18, 2026, among Hirose Enterprises, LLC, Hirose Enterprise LLC, and Shuji Hirose

**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND BREACH OF CONTRACT**