LATHAM & WATKINS LLP
Laura R. Washington (Bar No. 266775)
*laura.washington@lw.com*
Dixon M. Carvalho Anderson (Bar No. 333894)
*dixon.carvalhoanderson@lw.com*
10250 Constellation Blvd, Suite 1100
Los Angeles, California 90067
Telephone: (424) 653-5500

Brittany N. Lovejoy (Bar No. 286813)
*britt.lovejoy@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600

*Attorneys for Defendant*
*Parkwood Entertainment, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

HIROSE ENTERPRISE LLC, *a Delaware limited liability company*; and SHUJI HIROSE, *an individual*,

Plaintiffs,

v.

JOHN HOLIDAY, *professionally known as* FOREMOST POETS; BEYONCE KNOWLES-CARTER, professionally known as BEYONCE; PARKWOOD ENTERTAINMENT, LLC; SONY MUSIC ENTERTAINMENT; SONY MUSIC PUBLISHING, LLC; and W CHAPPELL MUSIC CORP. d/b/a WC MUSIC CORP.,

Defendants.

Case No.: 2:26-cv-08851-MEMF-AJRx

**PARKWOOD'S NOTICE OF MOTION AND MOTION TO DISMISS AND STRIKE COMPLAINT; MEMORANDUM IN SUPPORT**

Date: February 4, 2027
Time: 10:00 a.m.
Courtroom: 8B

Hon. Maame Ewusi-Mensah Frimpong

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 4, 2027 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Maame Ewusi-Mensah Frimpong in Courtroom 8B of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California 90012, Defendant Parkwood Entertainment, LLC ("Parkwood") will and hereby does move to dismiss and strike the Complaint ("Complaint") for copyright infringement and breach of contract brought by Plaintiffs Hirose Enterprise LLC and Shuji Hirose ("Plaintiffs") pursuant to Rule 12(b)(6) and Rule 12(f)(2) of the Federal Rules of Civil Procedure. Parkwood moves to dismiss on the grounds that: (1) Plaintiffs' claims are barred by the statute of limitations; (2) Plaintiffs should be judicially estopped from alleging exclusive ownership of the copyright at issue; (3) Plaintiffs do not plausibly allege ownership of the copyright at issue; and (4) Plaintiffs fail to plausibly allege secondary copyright liability. Parkwood moves to strike Plaintiffs' prayer for attorneys' fees because such fees are barred under 17 U.S.C. § 412.

Pursuant to Local Rule 7-3, counsel for Parkwood tried to meet and confer with Plaintiffs' counsel regarding the motion to dismiss, but Plaintiffs' counsel never responded. Decl. of Laura R. Washington ¶ 12 ("Washington Decl.").

This motion to dismiss is based upon this notice, the attached motion, the Request for Judicial Notice ("RJN") filed contemporaneously herewith, the memorandum of points and authorities, the declaration of Laura R. Washington, any documents judicially noticed by this Court, and all pleadings, records, and files herein in the above-captioned case, and such oral argument as the Court may permit.

Dated: October 15, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Laura R. Washington*

Laura R. Washington (Bar No. 266775)
*laura.washington@lw.com*
Dixon M. Carvalho Anderson (Bar No. 333894)
*dixon.carvalhoanderson@lw.com*
10250 Constellation Blvd, Suite 1100
Los Angeles, California 90067
Telephone: (424) 653-5500
Facsimile: (424) 653-5501

Brittany N. Lovejoy (Bar No. 286813)
*britt.lovejoy@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600

*Attorneys for Defendant Parkwood Entertainment, LLC*

## MOTION TO DISMISS

Pursuant to Rule 12(b)(6) and Rule 12(f)(2) of the Federal Rules of Civil Procedure, Defendant Parkwood Entertainment, LLC ("Parkwood") hereby moves to dismiss and strike the Complaint filed by Plaintiffs Hirose Enterprise LLC and Shuji Hirose with prejudice on the following grounds:

- Plaintiffs' claims are barred by the statute of limitations, because they did not bring this suit within three years of their claims accruing.
- Plaintiffs do not plausibly allege ownership of the copyright at issue because they do not sufficiently plead a valid chain of title consisting of written and signed transfer agreements.
- Plaintiffs should be judicially estopped from alleging exclusive ownership of the copyright at issue.
- Plaintiffs fail to plausibly allege secondary copyright liability. There can be no secondary infringement without direct infringement, and Plaintiffs' conclusory allegations are insufficient to state claims for contributory or vicarious infringement.
- Plaintiffs' prayer for attorneys' fees is barred under 17 U.S.C. § 412**.**

Dated: October 15, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Laura R. Washington*

Laura R. Washington (Bar No. 266775)
*laura.washington@lw.com*
Dixon M. Carvalho Anderson (Bar No. 333894)
*dixon.carvalhoanderson@lw.com*
10250 Constellation Blvd, Suite 1100
Los Angeles, California 90067
Telephone: (424) 653-5500
Facsimile: (424) 653-5501

Brittany N. Lovejoy (Bar No. 286813)
*britt.lovejoy@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111

Telephone: (415) 391-0600

*Attorneys for Defendant Parkwood Entertainment, LLC*

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. BACKGROUND ..... 3

A. *Hirose I* ..... 3

B. *Hirose II* ..... 6

III. LEGAL STANDARD ..... 8

IV. ARGUMENT ..... 9

A. Plaintiffs' Claims Are Untimely. ..... 9

B. Plaintiffs Do Not Plausibly Allege Ownership Of "Moonraker." ..... 11

C. Plaintiffs Should Be Estopped From Alleging Exclusive Ownership. ..... 15

1. The *Hirose II* Plaintiffs were virtually represented in *Hirose I*. ..... 16

2. *Hirose II* is "clearly inconsistent" with *Hirose I*. ..... 17

3. The Court relied on and accepted Plaintiffs' earlier position. ..... 18

4. Plaintiffs would gain an unfair advantage and Parkwood would be unfairly harmed if Plaintiffs are not estopped. ..... 18

D. Plaintiffs' Secondary Infringement Claims Fail. ..... 20

E. *Hirose II* Should Be Dismissed With Prejudice ..... 21

V. CONCLUSION ..... 22

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Armstead v. City of Los Angeles*,
66 F. Supp. 3d 1254 (C.D. Cal. 2014) ....................3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................8

*Barnes v. Sanchez*,
2026 WL 1912085 (N.D. Cal. July 2, 2026) ....................20

*Baughman v. Walt Disney World Co.*,
685 F.3d 1131 (9th Cir. 2012) ....................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................8

*Campolo v. Duel*,
2023 WL 2558562 (C.D. Cal. Jan. 11, 2023) ....................21

*Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*,
878 F. Supp. 2d 1009 (C.D. Cal. 2011) ....................21

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
607 U.S. 583 (2026) ....................20

*Doe #1 M.L. v. San Bernardino Sheriff Dep't*,
753 F. Supp. 3d 1024 (C.D. Cal. 2024) ....................21

*Dwarakanath v. Priyanka*,
2026 WL 1215667 (N.D. Cal. May 4, 2026) ....................11

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ....................14, 20

*Finn v. Sullivan*,
228 F. Supp. 3d 972 (N.D. Cal. 2017) ....................17, 19

*Gagne v. Zodiac Mar. Agencies, Ltd.*,
274 F. Supp. 2d 1144 (S.D. Cal. 2003) ....................18

*Goodman Ball, Inc. v. Mach II Aviation, Inc.*,
2010 WL 4807090 (N.D. Cal. Nov. 19, 2010) ....................16

*Hamilton v. State Farm Fire & Cas. Co.*,
270 F.3d 778 (9th Cir. 2001) ....................15, 16, 18, 19

*Hartford Cas. Ins. Co. v. Am. Dairy & Food Consulting Lab'ys, Inc.*, 2009 WL 4269603 (E.D. Cal. Nov. 25, 2009) ..... 15

*Hirose Enters., LLC v. Holiday*, 2026 WL 1915708 (C.D. Cal. June 26, 2026) ..... 6, 7

*Hirose Enters., LLC v. Holiday*, No. 2:25-CV-06973-MEMF-AJR (C.D. Cal. July 29, 2025) ..... *passim*

*In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ..... 9

*In re Gottheiner*, 703 F.2d 1136 (9th Cir. 1983) ..... 16

*Irwin v. Mascott*, 370 F.3d 924 (9th Cir. 2004) ..... 16, 17

*Knievel v. ESPN*, 393 F.3d 1068 (9th Cir. 2005) ..... 3

*Lance Int'l, Inc. v. First Nat'l City Bank*, 86 A.D.3d 479 (2011) ..... 13

*Maloney v. Scottsdale Ins. Co.*, 256 F. App'x 29 (9th Cir. 2007) ..... 15

*Marchioli v. Pre-employ.com, Inc.*, 2017 WL 8186761 (C.D. Cal. June 30, 2017) ..... 11

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 2d 1152 (C.D. Cal. 2008) ..... 17, 19

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983 (9th Cir. 2012) ..... 16

*Molski v. Mandarin Touch Rest.*, 385 F. Supp. 2d 1042 (C.D. Cal. 2005) ..... 11, 12

*Nazemian v. NVIDIA Corp.*, 2026 WL 1229583 (N.D. Cal. May 5, 2026) ..... 20

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ..... 18

*Pamfiloff v. Giant Recs., Inc.*, 794 F. Supp. 933 (N.D. Cal. 1992) ..... 13

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) ....................20

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007) ....................20

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
522 F.3d 1049 (9th Cir. 2008) ....................21

*Qwest Commc'ns Corp. v. Herakles, LLC*,
2008 WL 783347 (E.D. Cal. Mar. 20, 2008) ....................15

*Radio Television Espanola S.A. v. New World Ent., Ltd.*,
183 F.3d 922 (9th Cir. 1999) ....................14

*Santa-Rosa v. Combo Recs.*,
471 F.3d 224 (1st Cir. 2006)....................9, 11

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*,
733 F.3d 1251 (9th Cir. 2013) ....................9, 11

*Somers v. Apple, Inc.*,
729 F.3d 953 (9th Cir. 2013) ....................15

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ....................11, 12

*Underwood v. Lastrada Ent. Co., Ltd.*,
2021 WL 4084669 (S.D.N.Y. Sept. 8, 2021)....................13

*United States v. Biden*,
728 F. Supp. 3d 1054 (C.D. Cal. 2024) ....................18

*United States v. Black*,
482 F.3d 1035 (9th Cir. 2007) ....................3

*United States v. Geophysical Corp. of Alaska*,
732 F.2d 693 (9th Cir. 1984) ....................16

*Whitaker v. Tesla Motors, Inc.*,
985 F.3d 1173 (9th Cir. 2021) ....................8

*White v. Warner-Tamerlane Publ'g Corp.*,
2017 WL 4685542 (C.D. Cal. May 22, 2017) ....................9, 10

*Zach Motion Pictures, Inc. v. Bridgestone Multimedia Grp., LLC*,
2025 WL 1722998 (C.D. Cal. June 3, 2025) ....................10

*Zahedi v. Miramax, LLC*,
2022 WL 4596551 (C.D. Cal. Aug. 19, 2022) ........ 9, 10

**STATUTES**

17 U.S.C.
§ 204(a) ........ 5, 12, 13, 14
§ 412 ........ 14
§ 507(b) ........ 9

N.Y. Bus. Corp. Law § 1006(a)(1) ........ 13

**RULES**

Fed. R. Civ. P.
8 ........ 2, 14, 15
8(d) ........ 15
12(b)(6) ........ 8

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Parkwood Entertainment, LLC ("Parkwood") obtained a license to use the "Moonraker" song from its author, which gave it the lawful right to sample "Moonraker" in the song "Alien Superstar." Simply put, Parkwood cannot be liable for allegedly infringing a work it had a valid license to use.

Yet, Shuji Hirose returns to this Court for the *fourth time*, this time through another entity he controls called Hirose Enterprise LLC (the "Delaware LLC"), asserting claims that have already failed and will fail again. As this Court no doubt remembers, Mr. Hirose, through Hirose Enterprises, LLC (the "Florida LLC"), pursued nearly identical and equally meritless copyright infringement claims against Parkwood for a year in *Hirose Enters., LLC v. Holiday*, No. 2:25-CV-06973-MEMF-AJR (C.D. Cal. July 29, 2025) ("*Hirose I*").

In *Hirose I*, the Florida LLC—which Mr. Hirose is the sole member of—filed three different complaints, each rife with convoluted and contradictory allegations. Ultimately, this Court rejected Mr. Hirose's copyright claims and dismissed them twice, the second time without leave to amend. Undeterred, Mr. Hirose brazenly returns in the instant action ("*Hirose II*") with the same claims against the same defendants, now alleging Hirose Enterprise LLC (rather than Hirose Enterprises, LLC) owns the copyrights.[1] In their Notice of Related Cases, Plaintiffs themselves admit that *Hirose II* is premised on the "same or substantially identical questions of law and fact" as *Hirose I*. Dkt. 2 at 2. *Hirose II* is plainly a bad faith attempt to again pursue baseless claims previously before this Court.[2] The claims here—like in *Hirose I*—are fatally deficient.

---

[1] The only difference between Hirose Enterprises, LLC and Hirose Enterprise LLC (the plaintiff in the current action) is the letter "S" and a comma.

[2] Parkwood is filing a motion for Rule 11 sanctions contemporaneously with this motion.

*First*, Plaintiffs' claims are untimely. The foundation of Plaintiffs' claims is that either Mr. Hirose or the Delaware LLC owns "Moonraker," not Mr. Holiday, the individual from whom Parkwood obtained its license. But, as alleged in the complaint, Parkwood repudiated Plaintiffs' ownership claims when it continued to use the "Moonraker" sample after receiving notice from Plaintiffs' counsel that its use was allegedly unauthorized. Under controlling Ninth Circuit law, Plaintiffs' claims thus accrued once: on the date of Parkwood's repudiation, which Plaintiffs admit was no later than January 30, 2023. Because the gravamen of this dispute is ownership, any subsequent acts of alleged infringement do not restart the clock. Because *Hirose II* was not filed until three years and six months after Parkwood's repudiation, Plaintiffs' copyright claims are time barred and may be dismissed on this basis alone.

*Second*, Plaintiffs do not plausibly allege ownership of the "Moonraker" copyright. Plaintiffs' ownership allegations are facially implausible when read against the directly contrary allegations from *Hirose I*. And even setting aside *Hirose I*, Plaintiffs still have not adequately alleged the required written chain of title. They still do not provide *even one* of the transfer agreements that supposedly comprise that chain of title and instead rely on two confirmatory copyright assignments and a quitclaim assignment executed weeks after the prior case was dismissed. By pleading most of their core allegations in the alternative, Plaintiffs stretch Rule 8 well past its breaking point.

*Third*, Plaintiffs should be judicially estopped from alleging exclusive ownership over "Moonraker." Mr. Hirose swore in *Hirose I* that Mr. Holiday retained co-ownership in the "Moonraker" copyright and the right to license that work to third parties. Allegations in the original *Hirose I* complaint confirmed the same. As a result, this Court held that "Holiday had the right to license the copyright material to Parkwood." *Hirose I*, 2026 WL 851963, at *6 n.4 (C.D. Cal. Mar. 25,

2026). Mr. Hirose could not escape his dispositive concession in *Hirose I*, and Plaintiffs should not be permitted to escape it now by filing a new action premised on materially the same facts.

*Finally*, Plaintiffs do not sufficiently allege any secondary infringement because their direct infringement claim fails and because their allegations of contributory and vicarious infringement are wholly conclusory.

Just like in *Hirose I*, the claims in *Hirose II* are meritless. Mr. Hirose's tales and serial efforts to somehow hold Parkwood liable for obtaining a valid license must come to an end. This Court already twice rejected the tangled and conflicting allegations in *Hirose I*. It should do the same here. Parkwood respectfully urges the Court to dismiss Plaintiffs' claims with prejudice.

## II. BACKGROUND

### A. ***Hirose I***

The Florida LLC[3] filed *Hirose I* on July 29, 2025, alleging that the song, "Alien Superstar," used an unauthorized sample of the sound recording and musical composition, "Moonraker." *See generally* Washington Decl. Ex. 2 (Compl. ("*Hirose I* Compl."), Dkt. 1, *Hirose I*).[4] As alleged, Mr. Holiday authored "Moonraker" and subsequently "transferred any and all rights to the sound recording" to Mr. Hirose's entity Soundmen on Wax, Ltd. ("Soundmen"). *Id.* ¶¶ 13–15. But the original complaint admitted that Mr. Holiday and Soundmen "equally split all publishing revenue from the composition of 'Moonraker' on a 50/50 basis" and Soundmen accordingly transferred only "½ ownership of the

---

[3] Mr. Hirose represents he is the sole principal of both the Delaware LLC (a plaintiff in this action) and the Florida LLC (the plaintiff in *Hirose I*). *See* Washington Decl. Ex. 8 (Declaration of Shuji Hirose ("Second Hirose Decl."), Dkt. 70-1, *Hirose I*) ¶ 2.

[4] The Court may consider *Hirose I* filings and orders, which are either incorporated into the *Hirose II* complaint by reference or proper subjects of judicial notice. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Armstead v. City of Los Angeles*, 66 F. Supp. 3d 1254, 1261 (C.D. Cal. 2014) (citing *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007)); *see generally* RJN.

publishing rights to the composition, 'Moonraker'" to the Florida LLC. *Id.* ¶¶ 14, 16. According to the original complaint, the transfer to Soundmen occurred sometime after 1998, with a subsequent transfer from Soundmen to the Florida LLC in "approximately 2008." *Id.* Neither transfer was alleged to be in writing. *See generally id.*

After Parkwood's counsel informed the Florida LLC that it could not maintain a copyright infringement claim because Parkwood had obtained a valid license from Mr. Holiday[5]—an alleged co-owner of "Moonraker"—the Florida LLC amended its complaint to delete any reference to Mr. Holiday's "1/2 ownership" rights. Washington Decl. ¶ 4. The First Amended Complaint ("FAC") instead alleged (still without reference to any written documentation) that Mr. Holiday "transferred any and all rights to the sound recording . . . *and composition* of 'Moonraker'" and that the Florida LLC "acquired 100% ownership of the sound recording 'Moonraker' *and* of the publishing rights to the composition, 'Moonraker.'" Washington Decl. Ex. 3 (FAC, Dkt. 37, *Hirose I*) ¶¶ 18, 20 (emphases added). But when Parkwood moved to dismiss the FAC, Mr. Hirose—the Florida LLC's "sole member"—submitted a sworn declaration averring that Mr. Holiday transferred only "50/50 publishing" rights to Soundmen with "***third-party licensing rights shared equally.***" Washington Decl. Ex. 8 (Second Hirose Decl.) ¶ 2; Washington Decl. Ex. 5 (Declaration of Shuji Hirose ("First Hirose Decl."), Dkt. 42-1, *Hirose I*) ¶ 7 (emphasis added).

This Court dismissed the *Hirose I* FAC, and held that the Florida LLC's concession that Mr. Holiday was "a co-owner of the copyright" meant "Holiday had the right to license the copyright material to Parkwood." *Hirose I*, 2026 WL 851963,

[5] On September 6, 2022, Parkwood entered into a license agreement with Mr. Holiday for the use of "Moonraker" in the "Alien Superstar" track on Ms. Knowles-Carter's 2022 *Renaissance* album. *See generally* Washington Decl. Ex. 1 (Non-Exclusive License-Agreement, Dkt. 38-2, *Hirose I*). The license agreement is incorporated by reference into the *Hirose II* complaint. *See, e.g.*, Compl. ¶ 3.

at *6–7, 6 n.4. The Court also found that Plaintiff failed to allege written transfer agreements as required by section 204(a) of the Copyright Act, and that public records demonstrated Soundmen could not have transferred the alleged copyright to the Florida LLC in 2008 because neither entity existed at that time. *Id.* at *5–6.

The Florida LLC then filed a Second Amended Complaint ("SAC"), again alleging, without documentation, that Mr. Holiday did not retain "any co-ownership interest in the copyright." Washington Decl. Ex. 6 (SAC, Dkt. 64, *Hirose I*) ¶ 20. The SAC conceded that the Florida LLC was not formed until *after* both the copyright registration of "Moonraker" and the filing of the original complaint in *Hirose I*. *Id.* ¶¶ 6, 34. The SAC alleged for the first time that Mr. Holiday and Soundmen entered into "a series of written and signed exclusive recording agreements" beginning in January 1998, though none of the purported written agreements were attached to the SAC. *Id.* ¶ 19; *see also id.* ¶ 23.

The Florida LLC also pleaded an entirely new chain of title. While the FAC alleged a 2008 transfer directly from Soundmen to the Florida LLC, the SAC alleged:

- Mr. Holiday transferred all rights to Soundmen in 1998;
- prior to Soundmen's dissolution, Mr. Hirose, the "sole principal of Soundmen," assigned the catalogue and copyright interests to himself individually; and
- on August 6, 2025, Mr. Hirose assigned all rights to the Florida LLC. *Id.* ¶¶ 33–34.

Finally, the SAC introduced (but did not attach) a brand new 2015 agreement that purportedly confirmed its allegations. *Id.* ¶ 37.

When Parkwood again moved to dismiss, the Florida LLC conceded that "rights to Moonraker are controlled by the 'original publishers,' which Plaintiff understands" to include Mr. Holiday. Washington Decl. Ex. 7 (Opposition to

Motion to Dismiss SAC, Dkt. 70, *Hirose I*) at 18. And Mr. Hirose again declared "Holiday retained certain publishing interests." Washington Decl. Ex. 8 (Second Hirose Decl.) ¶ 17. The Florida LLC also contended, for the first time, that the Delaware LLC (which was not a party to *Hirose I*) actually owned "Moonraker" and was the real party in interest. Washington Decl. Ex. 7 (Opposition to Motion to Dismiss SAC) at 10. On June 26, 2026, this Court granted Parkwood's motion to dismiss the SAC without leave to amend, finding that the Florida LLC lacked Article III standing. *Hirose Enters., LLC v. Holiday*, 2026 WL 1915708, at *3 (C.D. Cal. June 26, 2026).

**B. *<u>Hirose II</u>***

On August 10, 2026, the Delaware LLC and Mr. Hirose in his individual capacity filed *Hirose II*. *See generally* Dkt. 1 ("Compl."). Like the Florida LLC from *Hirose I*, the Delaware LLC was formed by Mr. Hirose, who is its "sole member." *Id.* ¶ 9. Plaintiffs' Notice of Related Cases states that *Hirose II* is based on "the same events and occurrences" and "the same or substantially identical questions of law and fact" as *Hirose I*. Dkt. 2 at 2–3. Nevertheless, Plaintiffs now allege that Mr. Holiday transferred all "*right, title, and interest in and to* the *sound recording* of 'Moonraker' *and* . . . the underlying *musical composition*." Compl. ¶ 19 (emphasis added); *see id.* ¶ 20. Those allegations, of course, directly contradict Mr. Hirose's admissions in the original *Hirose I* complaint. *See* Washington Decl. Ex. 2 (*Hirose I* Compl.) ¶¶ 14, 16.

Plaintiffs also jettison every one of the prior attempts to allege chain of title and present a new one, apparently intended to show that the Delaware LLC (or, alternatively, Mr. Hirose) owns the copyright in "Moonraker." Plaintiffs allege that:

- in 1998, Mr. Holiday transferred all of his ownership rights in "Moonraker" to Soundmen;

- "in or about 2002, and in any event prior to Soundmen's dissolution," Soundmen assigned its "Moonraker" rights to Mr. Hirose individually; and
- "in or about the period from the formation of" the Delaware LLC in October 2014 "through no later than August 7, 2016," Mr. Hirose assigned the copyright to the Delaware LLC. Compl. ¶¶ 19, 24, 29.

Neither the second nor the third transfers are alleged to have been in writing, but two post-litigation documents Plaintiffs conveniently describe as "Confirmatory Copyright Assignment[s]"—one between Soundmen and Mr. Hirose and one between Mr. Hirose and the Delaware LLC—allegedly "memorialize[]" those transfers. *Id.* ¶¶ 24, 29; *see* Dkt. Nos. 1-6, 1-7. The confirmatory assignment from Mr. Hirose to the Delaware LLC crucially leaves the date that transfer supposedly occurred blank. *See* Dkt. 1-7 at 1. And both "confirmatory assignments" were executed on July 18, 2026, roughly ***three weeks after this Court granted Parkwood's motion to dismiss the SAC in Hirose I without leave to amend***. *See* Dkt. Nos. 1-6, 1-7; *see also Hirose I*, 2026 WL 1915708.

Plaintiffs acknowledge that *Hirose I*'s August 6, 2025 transfer from Mr. Hirose to the Florida LLC (and apparently the allegations in the *Hirose I* complaints) was a "mistake[]" because the relevant rights had actually been held by the Delaware LLC since at latest August 7, 2016 (the day the 2016 "Heads of Agreement" was executed). Compl. ¶¶ 30, 38; *id.* Ex. 3. Plaintiffs further allege that a quitclaim assignment between the Florida LLC and the Delaware LLC—again executed on July 18, 2026 (just weeks after *Hirose I* was dismissed)—confirms the Florida LLC holds no interest in "Moonraker." *Id.* ¶¶ 38–39.

In case this *post hoc* maneuvering is insufficient to effect assignment to the Delaware LLC, Plaintiffs alternatively allege that Mr. Hirose has individually owned the copyright since 2002. In support of that alternative theory, Plaintiffs allege that

Soundmen's 2002 dissolution vested all ownership rights in "Moonraker" in Mr. Hirose "by operation of law," *id.* ¶¶ 25–26, and that "at all times since in or about 2002" Mr. Hirose has "remained the legal owner" of "Moonraker," *id.* ¶ 34.

Finally, Plaintiffs concede that Mr. Holiday granted Parkwood a "Moonraker" license, *id.* ¶ 46, and that Parkwood released and distributed "Alien Superstar" to the public starting "[o]n or about July 29, 2022," *id.* ¶¶ 2, 44, 51. Plaintiffs allege Parkwood directly infringed the "Moonraker" copyright "by reproducing, distributing, and publicly performing 'Alien Superstar.'" *Id.* ¶ 64. Parkwood allegedly committed contributory infringement by inducing or materially contributing to direct infringement, and also committed vicarious infringement by "declin[ing] to . . . stop the infringing." *Id.* ¶¶ 66, 71. Plaintiffs allege that on January 30, 2023, their counsel informed Parkwood that its "use of 'Moonraker' in connection with 'Alien Superstar' was unauthorized." Compl. ¶ 49. Parkwood allegedly "continued its exploitation after receiving [that] written notice." *Id.* ¶ 53.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "*Iqbal* and *Twombly* require well-pleaded facts, not legal conclusions, that plausibly give rise to an entitlement to relief. The plausibility of a pleading thus derives from its well-pleaded factual allegations." *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021) (citation modified). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557), and "[t]he court need not . . . . accept as true allegations that are merely

conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## IV. ARGUMENT

### A. Plaintiffs' Claims Are Untimely.

Plaintiffs' claims are time-barred under the Copyright Act because this action—filed on August 10, 2026—did not "commence[] within three years after the claim accrued." 17 U.S.C. § 507(b). Where, as here, "the nature of the copyright claim" and "the gravamen of the dispute is ownership," the claims "accrue only once"—when the plaintiff's ownership is repudiated. *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254, 1258 (9th Cir. 2013). Repudiation can be shown where the defendant "openly and notoriously sell[s] records without paying" plaintiff, *Zahedi v. Miramax, LLC*, 2022 WL 4596551, at *7 (C.D. Cal. Aug. 19, 2022) (citing *Santa-Rosa v. Combo Recs.*, 471 F.3d 224, 228 (1st Cir. 2006)), or when "the popularity of the track" makes it clear plaintiff must have "discovered the contested ownership rights," *White v. Warner-Tamerlane Publ'g Corp.*, 2017 WL 4685542, at *3 (C.D. Cal. May 22, 2017). Repudiation can also be shown by "refus[ing] to comply with" a plaintiff's demand. *Seven Arts Filmed Ent. Ltd.*, 733 F.3d at 1257. As alleged by Plaintiffs, Parkwood plainly repudiated Plaintiffs' copyright ownership in "Moonraker" in January 2023—more than three years before *Hirose II* was filed—when it continued to sell and exploit "Alien Superstar" after receiving written notice from Plaintiffs that its use was unauthorized and when it did so worldwide.

The nature and gravamen of the *Hirose II* dispute is ownership over "Moonraker." No one contests that Parkwood licensed "Moonraker" from Mr. Holiday for use in "Alien Superstar." The core of the Parties' dispute is instead whether Mr. Hirose and/or the Delaware LLC exclusively owns the copyright in "Moonraker" such that Parkwood's license is invalid. Indeed, Plaintiffs dedicate the

first *twenty-two* substantive paragraphs of their complaint to establishing their purported ownership of "Moonraker." Compl. ¶¶ 18-40. And, as Plaintiffs allege, their claims flow from "Holiday purport[ing] to license rights he did not own." Compl. ¶ 3. Courts in this Circuit routinely hold that the statute of limitations for similar ownership disputes runs from the when ownership is repudiated, and accrue only once—meaning, subsequent acts of infringement (*e.g.*, additional reproductions or distributions) do not "restart" the clock. *See, e.g.*, *Zahedi*, 2022 WL 4596551, at *6–8 (where defendant denied plaintiff "owns the copyright," statute of limitations calculated "only once" from repudiation of plaintiff's ownership); *Zach Motion Pictures, Inc. v. Bridgestone Multimedia Grp., LLC*, 2025 WL 1722998, at *3 (C.D. Cal. June 3, 2025) (where "ownership of the underlying rights [was] the dispositive issue," claim accrued when the defendant repudiated plaintiff's "sole ownership" of the film); *White*, 2017 WL 4685542, at *3 (where suit, "if allowed to go forward, would primarily involve disputes over the ownership of the track," the "date of 'repudiation' applies").

Plaintiffs' claims first accrued when Parkwood repudiated Plaintiffs' asserted ownership over "Moonraker." Parkwood "expressly repudiated" Plaintiffs' ownership no later than January 2023. On January 30, 2023, Plaintiffs allege that their counsel sent written notice to Parkwood's counsel that "the use of 'Moonraker' in connection with 'Alien Superstar' was unauthorized" and "expressly reserv[ed] all rights of Hirose and Hirose Enterprise." Compl. ¶ 49. Parkwood allegedly continued to exploit "Moonraker" after receiving this written notice, *id.* ¶ 53, and thereafter "reproduced, distributed, [and] publicly performed" the "Alien Superstar" song "throughout the United States and the world," *id.* ¶ 51. Parkwood's "open and notorious[]" sale of "Alien Superstar" after receiving written notice of Plaintiffs' purported ownership rights expressly repudiated those rights. *See, e.g., Zahedi*, 2022 WL 4596551, at *7–8 (repudiation established by "openly and notoriously selling

records"); *Santa-Rosa*, 471 F.3d at 228 (repudiation established when defendant "openly, and quite notoriously, sold [plaintiff's] records without providing payment to him"). And there is no question that Parkwood's continued worldwide use of "Moonraker" notified Plaintiffs of that repudiation. Plaintiffs did not file this lawsuit until more than three years after Parkwood repudiated their ownership, so the Copyright Act bars Plaintiffs' claims. *See Seven Arts Filmed Ent. Ltd.*, 733 F.3d at 1257–58. Plaintiffs' claims must be dismissed on this basis alone.

**B. Plaintiffs Do Not Plausibly Allege Ownership Of "Moonraker."**

Plaintiffs' allegations are also facially implausible and do not state a cognizable claim. As a preliminary matter, this Court can, and should, consider the allegations and sworn declarations in *Hirose I* to determine whether Plaintiffs plausibly allege ownership of "Moonraker" here. Washington Decl. Ex. 5 (First Hirose Decl.) ¶ 2; *see supra* section II; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit"); *see also Dwarakanath v. Priyanka*, 2026 WL 1215667, at *3 n.3 (N.D. Cal. May 4, 2026) (court may "consider the prior allegations as part of its 'context-specific' inquiry based on its judicial experience and common sense."). Even a cursory comparison of *Hirose I* to *Hirose II* demonstrates that Plaintiffs' allegations here are "inherently implausible" and insufficient to "survive a motion to dismiss." *Marchioli v. Pre-employ.com, Inc.*, 2017 WL 8186761, at *19 (C.D. Cal. June 30, 2017); *see also Molski v. Mandarin Touch Rest.*, 385 F. Supp. 2d 1042, 1046 (C.D. Cal. 2005) (plaintiff's "litigation history undercuts his credibility").

Across the three complaints, Mr. Hirose's sworn declarations, and other filings in *Hirose I*, the Florida LLC oscillated from asserting partial ownership on the one hand to complete ownership on the other. *See supra* section II.A. The Florida LLC also contradicted its own chain-of-title allegations on multiple

occasions, alleging that certain assignments supported its ownership only to deny those assignments ever occurred in the next iteration of its complaint. *See id*. And for a year, the Florida LLC and Mr. Hirose steadfastly maintained that the Florida LLC owned the "Moonraker" copyright. Then, when it became apparent that the Florida LLC lacked standing to bring its claims at all, the Florida LLC tried to substitute the Delaware LLC in as the purported "real party in interest." *See supra* section II.A. When that did not work, Mr. Hirose tried to rewrite history in favor of the Delaware LLC by preparing and executing the 2026 "Confirmatory Copyright Assignments" and a quitclaim that purportedly establish the Delaware LLC's ownership of "Moonraker." Only then did he file *Hirose II*, alleging that the claim of ownership by the Florida LLC in *Hirose I* was merely a "mistake[]." Compl. ¶ 38. Against this backdrop, Plaintiffs' ownership and chain-of-title allegations in *Hirose II*—which completely contradict all of the allegations in *Hirose I*—cannot be credited. *See Sprewell*, 266 F.3d at 988.

Even without considering that history, the *Hirose II* complaint still fails to plausibly allege written transfer agreements establishing that either of the Plaintiffs owns "Moonraker." Plaintiffs depend on three transfers to establish a valid chain of title: (1) a 1998 transfer from Mr. Holiday to Soundmen; (2) a 2002 transfer from Soundmen to Mr. Hirose; and (3) a transfer "in or about the period from the formation of" the Delaware LLC in October 2014 "through no later than August 7, 2016," from Mr. Hirose to the Delaware LLC. Compl. ¶¶ 19, 24, 29.[6] Neither the second nor the third transfer withstands scrutiny.

"A transfer of copyright ownership . . . is not valid unless an instrument of conveyance . . . is in writing and signed by the owner of the rights conveyed." 17

---

[6] Not one of these transfer agreements is attached to Plaintiffs' complaint, and none have been provided. Indeed, it appears Plaintiffs concede they do not have the transfer agreements, since they rely on two confirmatory copyright assignments and a quitclaim assignment executed weeks after *Hirose I* was dismissed. Washington Decl. ¶ 11; *see* Dkt. Nos. 1-6, 1-7, 1-8.

U.S.C. § 204(a). Soundmen's alleged transfer to Mr. Hirose at some point prior to Soundmen's dissolution on September 25, 2002 is not alleged to be in writing as required. But it was supposedly "subsequently memorialized" on July 18, 2026—at least 24 years after the underlying transfer allegedly took place, 24 years after Soundmen was dissolved "in furtherance of the winding up of its affairs," Compl. ¶¶ 24–25, and three weeks after the dismissal of *Hirose I*. These allegations fail the "common sense" test, because at minimum "the winding up of affairs cannot continue indefinitely," and Soundmen could not plausibly be "winding up its affairs" in 2026. *Lance Int'l, Inc. v. First Nat'l City Bank*, 86 A.D.3d 479, 480 (2011).[7]

Plaintiffs do not allege that Mr. Hirose's purported transfer to the Delaware LLC was in writing, and they do not even allege the year that transfer supposedly took place. Compl. ¶ 29. All Plaintiffs say is that that transfer was "completed in or about the period from the formation of [the Delaware LLC]" in October 2014 and "no later than August 7, 2016." *Id.* And while the transfer was purportedly "memorialized" in a confirmatory assignment, that confirmatory assignment leaves the date of the transfer blank and was executed weeks after *Hirose I* was dismissed and at least *ten years* after the underlying transfer supposedly took place. *See* Dkt. 1-7 at 1. This is not sufficient to plead the required written assignment.

Even assuming the alleged confirmatory assignment was otherwise effective, it is missing "'essential terms' pertaining to [the] transfer of rights," and cannot satisfy the requirements of section 204(a). *Pamfiloff v. Giant Recs., Inc.*, 794 F. Supp. 933, 936–38 (N.D. Cal. 1992) (finding combination of documents, including

[7] Plaintiffs' alternative allegation that this transfer was accomplished "by operation of law" when Soundmen dissolved fares no better. Plaintiffs point to no authority to support their claim that distribution of "Moonraker" can—or did—vest in Mr. Hirose automatically "by operation of law" after Soundmen's dissolution. Compl. ¶ 26. The opposite is true under New York law, which governs New York corporations like Soundmen, Compl. ¶ 10: "New York courts have repeatedly rejected contentions that a dissolved corporation's assets automatically pass to its shareholders upon dissolution." *Underwood v. Lastrada Ent. Co., Ltd.*, 2021 WL 4084669, at *4 (S.D.N.Y. Sept. 8, 2021) (citing N.Y. Bus. Corp. Law § 1006(a)(1) (assets "remain in the corporation until transferred by it in its corporate name")).

"undated" document referencing royalty payments, insufficient); *see also Radio Television Espanola S.A. v. New World Ent., Ltd.*, 183 F.3d 922, 927 (9th Cir. 1999) (a lack of "information about the deal itself fails to satisfy the simple requirements of § 204(a)"). Further, Plaintiffs fail to explain how or why Mr. Hirose allegedly transferred the rights in "Moonraker" to the Delaware LLC at some point between 2014 and 2016 or how the Delaware LLC entered into the 2016 and 2017 "Heads of Agreements" when it was "canceled" at that time and not revived until April 2, 2026. Compl. ¶¶ 9, 29, 30–33. Nor do Plaintiffs explain how the Delaware LLC purportedly registered its copyright in "Moonraker" in March 2025 if it was not revived until more than a year later.[8] *See id.* ¶¶ 9, 36. These allegations simply do not meet the requirements of Rule 8, which demands "sufficient factual enhancement to cross the line between possibility and plausibility." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (citation modified).

Perhaps recognizing that the above chain-of-title allegations are implausible, Plaintiffs allege "in the alternative" that all rights in "Moonraker" vested in Mr. Hirose individually. Compl. ¶ 26. Under these alternative facts, Mr. Hirose "at all times since in or about 2002 remained the legal owner" of "Moonraker." *Id.* ¶ 34.

But Plaintiffs attach to their complaint a quitclaim assignment allegedly "confirming" that the August 6, 2025 assignment from Mr. Hirose to the Florida LLC was "executed under the mistaken belief that [Mr.] Hirose then held" the copyright in "Moonraker," and "quitclaiming to [the Delaware LLC] any, right, title, or interest the Florida Entity may have held." *Id.* ¶¶ 38–39; *see* Dkt. 1-8. As a result, and despite Plaintiffs' alternative allegations to the contrary, their *own* written quitclaim directly contradicts their latest allegations that Mr. Hirose might be the current owner of "Moonraker."

---

[8] The Court should strike Plaintiffs' prayer for attorneys' fees because such fees are barred under 17 U.S.C. § 412 due to the Delaware LLC's delayed copyright registration. *See* Compl., Prayer for Relief ¶ 4; 17 U.S.C. § 412.

In sum, Plaintiffs allege and/or attach to the complaint six agreements—two "Confirmatory Copyright Assignments," a quitclaim, two "Heads of Agreement," and a "mistaken" assignment. *All six agreements were executed by Mr. Hirose*, who now alleges that they either are or are not effective depending on what suits him. These are not the type of alternative allegations Rule 8(d) permits. *See Somers v. Apple, Inc.*, 729 F.3d 953, 964 (9th Cir. 2013) (plaintiff's theory "implausible in the face of contradictory market facts alleged in her complaint."). "While Rule 8 gives the pleader some leeway, no authority is known which permits blowing hot and cold in the same cause of action." *Hartford Cas. Ins. Co. v. Am. Dairy & Food Consulting Lab'ys, Inc.*, 2009 WL 4269603, at *12 (E.D. Cal. Nov. 25, 2009) (citing *Maloney v. Scottsdale Ins. Co.*, 256 F. App'x 29, 31–32 (9th Cir. 2007) (citation modified)); *see also Qwest Commc'ns Corp. v. Herakles, LLC*, 2008 WL 783347, at *12 (E.D. Cal. Mar. 20, 2008) (same). Moreover, Parkwood is aware of no authority that would allow Plaintiffs to execute real world agreements that conflict with one another simply to try to support contradictory alternative allegations pleaded in a complaint. Accordingly, Plaintiffs' many pleading "inconsistencies . . . cancel each other out and render the claim subject to dismissal for failure to state a claim." *Hartford Cas. Ins. Co.*, 2009 WL 4269603, at *12.

### C. **Plaintiffs Should Be Estopped From Alleging Exclusive Ownership.**

Even if the statute of limitations did not bar Plaintiffs' claims (it does) and their chain-of-title allegations were sufficient or plausible (they are not), Plaintiffs should be judicially estopped from alleging exclusive ownership of the "Moonraker" copyright.

Judicial estoppel "bar[s] the assertion of inconsistent positions in the same litigation," and also "bar[s] litigants from making incompatible statements in two different cases." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th

Cir. 2001). A party "technically not a party to the prior action may be bound by the prior decision if [its] interests are so similar to a party's that that party was [its] 'virtual representative' in the prior action." *Irwin v. Mascott*, 370 F.3d 924, 929 (9th Cir. 2004) (quoting *United States v. Geophysical Corp. of Alaska*, 732 F.2d 693, 697 (9th Cir. 1984)); *see also Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 996–98 (9th Cir. 2012). Courts consider whether (1) "a party's later position" is "clearly inconsistent with its earlier position;" (2) "a court [] accept[ed] that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled;" and (3) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Hamilton*, 270 F.3d at 782–83 (citation modified). Each factor is easily met here.

**1. The *Hirose II* Plaintiffs were virtually represented in *Hirose I*.**

In *Hirose I*, Mr. Hirose declared that he is "the sole member and managing member" of both the Florida LLC and the Delaware LLC, Washington Decl. Ex. 8 (Second Hirose Decl.) ¶ 2, so Mr. Hirose (a plaintiff himself in *Hirose II*) has had complete control over every plaintiff in both *Hirose I* and *Hirose II*—in fact, he is the only individual who can submit sworn statements in either case on behalf of these entities. *Goodman Ball, Inc. v. Mach II Aviation, Inc.*, 2010 WL 4807090, at *5 (N.D. Cal. Nov. 19, 2010) (citing *In re Gottheiner*, 703 F.2d 1136, 1140 (9th Cir. 1983) ("When a person owns most or all of the shares in a corporation and controls the affairs of the corporation, it is presumed that in any litigation involving that corporation the individual has sufficient commonality of interest" for privity)). The *Hirose II* plaintiffs were also virtually represented in *Hirose I* because Mr. Hirose was "intimately involved" in the prior action, such as by "submitting several key

declarations" and participating and controlling the first litigation. *See Irwin*, 370 F.3d at 929–30 (virtual representation established where parties' interests were substantially identical and plaintiff engaged in "[e]arlier tactical maneuvering"); *see also supra* section II. There thus can be no doubt that Mr. Hirose and the Delaware LLC were virtually represented by the Florida LLC in *Hirose I*.

**2. *Hirose II* is "clearly inconsistent" with *Hirose I*.**

"[A]ll that's needed to satisfy this factor" is that the virtual representative—the Florida LLC—"pressed a claim in the earlier lawsuit[] that is inconsistent with the position [Plaintiffs are] taking" here. *See Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1133 (9th Cir. 2012). In *Hirose I*, Mr. Hirose—as the "sole shareholder" and "sole principal" of the Florida LLC, Washington Decl. Ex. 8 (Second Hirose Decl.) ¶ 3—declared under penalty of perjury that Mr. Hirose's company, Soundmen, and Mr. Holiday had a "50/50" split in the publishing rights to "Moonraker" and that "third-party licensing rights [were] shared equally" between them. Washington Decl. Ex. 5 (First Hirose Decl.) ¶¶ 6–7. Signed filings, including the original *Hirose I* complaint, confirmed the same. *See supra* section II.A. Now, in *Hirose II*, Plaintiffs allege that Mr. Holiday "transferred to Soundmen *all* of Holiday's right, title, and interest in and to the sound recording of "Moonraker" *and* . . . the underlying musical composition." Compl. ¶ 19 (emphases added). In other words, after admitting in *Hirose I* that Mr. Holiday retained an ownership interest in the "Moonraker" copyright and the right to license that work to third parties, Mr. Hirose and his controlled entity now allege the exact opposite.

Plaintiffs do not explain how these "clearly inconsistent" positions can be reconciled. *See, e.g.*, *Finn v. Sullivan*, 228 F. Supp. 3d 972, 981–83 (N.D. Cal. 2017) ("clearly inconsistent" when plaintiff represented in one case that ownership interests had been transferred and in another case that they had not); *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 568 F. Supp. 2d 1152, 1181–83

(C.D. Cal. 2008) (statement that domicile was New York "clearly inconsistent" with statement in subsequent action that domicile was California); *Gagne v. Zodiac Mar. Agencies, Ltd.*, 274 F. Supp. 2d 1144, 1148–49 (S.D. Cal. 2003) (position that one ship was responsible for damage "clearly inconsistent" with position in subsequent action that a different ship was responsible).

**3. The Court relied on and accepted Plaintiffs' earlier position.**

Under this factor, courts need only have "relied on, *or* 'accepted,' the party's previous inconsistent position." *United States v. Biden*, 728 F. Supp. 3d 1054, 1112 (C.D. Cal. 2024) (citing *Hamilton*, 270 F.3d at 783) (emphasis added). This Court has done both. In *Hirose I*, this Court proceeded in "[a]ssessing Hirose's claim with the presumption that Holiday retained a 50% ownership in the publication rights," which meant that "Hirose ha[d] not alleged exclusive ownership to establish statutory standing." *Hirose I*, 2026 WL 851963, at *6. This Court further noted that "as a co-owner of the copyright, Holiday would be entitled to use of the copyright as well as providing a non-exclusive license," and, as a result, "Holiday had the right to license the copyright material to Parkwood" when he did. *Id.* at *6 n.4. The Court relied on that finding in dismissing the Florida LLC's FAC. *See generally id*. If the Court were to accept Plaintiffs' inconsistent position in this proceeding—*i.e.*, that Mr. Holiday did not retain co-ownership rights in, and the right to license, "Moonraker"—that would result in "inconsistent court determinations" and "the perception that either the first or the second court was misled." *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001).

**4. Plaintiffs would gain an unfair advantage and Parkwood would be unfairly harmed if Plaintiffs are not estopped.**

It would be blatantly unfair to permit Mr. Hirose and the Delaware LLC to take a position in *Hirose II* that is contrary to Mr. Hirose's sworn statements and other filings in *Hirose I*. Mr. Hirose and his controlled entities have changed their

story at least four times and their complaints have been dismissed twice. Plaintiffs would gain an unfair advantage if permitted to plead facts directly contrary to those relied on by the Court, and Parkwood, now briefing its third motion to dismiss, would clearly be harmed. *See Hamilton*, 270 F.3d at 783–85.

"The control of ["Moonraker"] was an issue decided early on in" *Hirose I*, and *Hirose II* is an "attempt by [Plaintiffs] to get around [this Court's] unfavorable order." *See Finn*, 228 F. Supp. 3d at 984. Mr. Hirose and the Florida LLC conceded in *Hirose I* that Mr. Holiday retained a 50 percent ownership interest in the publishing rights to "Moonraker" and the right to license the work to third parties. *See supra section* II.A. Through two amended complaints, they tried to plead their way around those dispositive admissions. But this Court held that they could not, concluding that "Holiday had the right to license the copyright material to Parkwood" when he did. *Hirose I*, 2026 WL 851963, at *6 n.4. *Hirose II* is merely a ploy to get a "do-over" and avoid that fatal defect through nominally different Plaintiffs while ignoring Mr. Hirose's prior sworn admissions.

But Plaintiffs' interests were already represented in *Hirose I*, and permitting them to now proceed under a theory of ownership clearly inconsistent with the one litigated there would give them precisely the unfair advantage judicial estoppel is intended to avoid. *Finn*, 228 F. Supp. 3d at 984; *see also CMG Worldwide, Inc.*, 568 F. Supp. 2d at 1196–99. Moreover, Parkwood already bore the "time, expense, and burden" of litigating "Moonraker's" ownership as alleged in the original *Hirose I*, and it should not be required to relitigate that issue now. *Finn*, 228 F. Supp. 3d at 984 (estoppel warranted where party had incurred cost of litigating prior case under contrary position). The Court should estop Plaintiffs from alleging (1) exclusive ownership of the "Moonraker" copyright and (2) that Mr. Holiday was not entitled to license "Moonraker" to Parkwood. On that basis, the Court should dismiss Plaintiffs' copyright infringement claims.

**D. <u>Plaintiffs' Secondary Infringement Claims Fail.</u>**

Plaintiffs' failure to sufficiently allege ownership of "Moonraker"—and that Parkwood's use was unauthorized—dooms their secondary infringement claims. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) (a plaintiff "must establish that there has been direct infringement by third parties."). Plaintiffs' contributory and vicarious infringement claims fail for additional reasons as well.

Under either the "knowledge plus material contribution" standard, *see Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007), or the standard articulated in *Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. 583, 592–94 (2026) (contributory liability attaches only if the defendant induced infringement by actively encouraging infringement through specific acts or offered a service tailored to infringement), Plaintiffs' contributory infringement claim should be dismissed. Plaintiffs offer only the conclusory allegation that Parkwood "intentionally induced, encouraged, and materially contributed" to the alleged direct infringement by "continuing to direct, supply, license, promote, and authorize" it. Compl. ¶ 66. These allegations are "no more than conclusions, [and] are not entitled to the assumption of truth." *Eclectic Props. E., LLC*, 751 F.3d at 996.

Plaintiffs' vicarious infringement claim is similarly conclusory. Plaintiffs allege only that Parkwood had the "right and ability" to "supervise, control, limit, or stop" the alleged infringement, and "while receiving [] direct financial benefit," Parkwood "declined" to do so. Compl. ¶¶ 69, 71. These allegations are insufficient to allege vicarious infringement. *See, e.g.*, *Barnes v. Sanchez*, 2026 WL 1912085, at *7–8 (N.D. Cal. July 2, 2026) (dismissing vicarious infringement claim as conclusory where plaintiff alleged only that defendant "has the right and ability to control infringing activity" and that defendant "derives a direct financial benefit from the infringing conduct"); *Nazemian v. NVIDIA Corp.*, 2026 WL 1229583, at

*7 (N.D. Cal. May 5, 2026) (same where plaintiff failed to "identify *how* [defendant] could exercise [] control." (emphasis in original)).

**E. *Hirose II* Should Be Dismissed With Prejudice.**

This last ditch effort by Mr. Hirose and his controlled entity (this time the Delaware LLC) to plead claims for copyright infringement comes too late and falls far short. The statute of limitations has run, and dismissal with prejudice is appropriate for this reason alone. *See Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1060 (9th Cir. 2008) ("amendments would have been futile" because claims were "barred by the statute of limitations"); *Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, 878 F. Supp. 2d 1009, 1021 (C.D. Cal. 2011) (dismissing with prejudice claims that were "barred by their respective statutes of limitation"); *Doe #1 M.L. v. San Bernardino Sheriff Dep't*, 753 F. Supp. 3d 1024, 1031 (C.D. Cal. 2024) (dismissing with prejudice because "claim is barred by the statute of limitations.").

Further, Plaintiffs' self-contradictory allegations confirm that they cannot allege any set of facts that would plausibly state a claim for relief against Parkwood for copyright infringement. Plaintiffs should also be estopped from attempting to plead around the *Hirose I* allegations that this Court relied on to find that Mr. Holiday was entitled to license "Moonraker" to Parkwood. This holding necessarily defeats Plaintiffs' claims and makes any amendment futile. *See supra* section IV.B.3. Moreover, Plaintiffs' consistent failure to plead the required written assignment that justifies its claims requires that Plaintiffs' litigation tactics must come to an end. Finally, Plaintiffs' secondary infringement claims fail because there is no plausible allegation of direct infringement and the allegations for contributory and vicarious liability are conclusory. For all of these reasons, the Court should dismiss Plaintiffs' claims against Parkwood with prejudice. *Campolo v. Duel*, 2023 WL 2558562, at *7 (C.D. Cal. Jan. 11, 2023) (Frimpong, J.).

## V. CONCLUSION

Parkwood respectfully requests that the Court dismiss all claims asserted against it with prejudice.

Dated: October 15, 2026

LATHAM & WATKINS LLP

By: */s/ Laura R. Washington*

Laura R. Washington (Bar No. 266775)
*laura.washington@lw.com*
Dixon M. Carvalho Anderson (Bar No. 333894)
*dixon.carvalhoanderson@lw.com*
10250 Constellation Blvd, Suite 1100
Los Angeles, California 90067
Telephone: (424) 653-5500
Facsimile: (424) 653-5501

Brittany N. Lovejoy (Bar No. 286813)
*britt.lovejoy@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: (415) 391-0600

*Attorneys for Defendant Parkwood Entertainment, LLC*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Parkwood Entertainment, LLC, certifies that this brief contains 6,976 words, which complies with Local Rule 11-6.1 and the word limit set by the Standing Order dated July 1, 2026.

Dated: October 15, 2026

By: *<u>/s/ Laura R. Washington</u>*
Laura R. Washington